Camille RUGGIERO

v.

CITY OF PROVIDENCE.

No. 2004–88–M.P.

Supreme Court of Rhode Island.

Dec. 19, 2005.

Andrew S. Caslowitz, East Providence, for Plaintiff.

Michael A. Tarro, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case comes before this Court pursuant to a petition for certiorari[1] filed by the petitioner, Camille Ruggiero. The petitioner seeks review of a decree of the Appellate Division of the Workers' Compensation Court that affirmed a trial judge's denial of her request to discontinue her workers' compensation benefits. The Appellate Division held that the Workers' Compensation Court did not have the authority under the Workers' Compensation Act (the act)[2] to grant Ms. Ruggiero's request to discontinue her workers' compensation benefits absent evidence establishing that she had regained her earning capacity. The Appellate Division also rejected the arguments of petitioner that revolved around a generalized and undeveloped reference to principles of equity and a conclusory reference to two provisions of the Rhode Island Constitution; the Appellate Division ruled that those arguments were without evidentiary support and were legally meritless.

Ms. Ruggiero argues that the Appellate Division erred as a matter of law when it ruled that her workers' compensation benefits could not be discontinued without evidence showing that her incapacity had ended. In addition, petitioner argues that the provisions of article 1, section 2, and

1. A party may seek review by the Supreme Court of a decision of the Appellate Division of the Workers' Compensation Court pursuant to G.L.1956 § 28–35–30. This section provides, in pertinent part:
 "(a) Upon petition for certiorari, the supreme court may affirm, set aside, or modify any decree of the appellate commission of the workers' compensation court only upon the following grounds:
 "(1) That the workers' compensation court acted without or in excess of its authority;
 "(2) That the order, decree, or award was procured by fraud; or
 "(3) That the appellate division erred on questions of law or equity, the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record."

2. Chapters 29 through 38 of title 28 of the General Laws constitute the "Workers' Compensation Act" (the act), the statutory scheme which governs the workers' compensation system.

article 1, section 5, of the Rhode Island Constitution, as well as principles of equity, require the granting of her request that her own benefits be discontinued. On May 21, 2004, we granted Ms. Ruggiero's petition for certiorari so that we could review the decision of the Appellate Division.

For the reasons set forth herein, we affirm the decree of the Appellate Division of the Workers' Compensation Court.

## Facts and Travel

On August 4, 1997, during the course of her employment with the City of Providence, Ms. Ruggiero sustained an injury due to the negligence of a third party. As a result of that injury, Ms. Ruggiero began receiving workers' compensation benefits on a weekly basis beginning on February 12, 1998. She has continued to receive those benefits from that time until now, with the exception of a short period that has no bearing on the case currently before us. In September of 1998, petitioner applied to the city for a disability retirement pension, which was granted with an effective date of November 28, 2001.

In December of 2001, a settlement was reached between Ms. Ruggiero and the third-party tortfeasor responsible for the work-related injury that she sustained in August of 1997. Shortly thereafter, in January of 2002, she forwarded the sum of $78,699.50 to the city to satisfy the city's lien stemming from the workers' compensation payments that had been made to date. (Payment of that amount to the city was required by § 28–35–58(a) of the act.[3])

Later that same month, the city began to take the statutorily authorized "holiday" from its obligation to make weekly workers' compensation payments to Ms. Ruggiero. Section 28–35–58(a)[4] entitles the city to suspend the payment of compensation benefits for a definite period of time calculated by dividing the excess third-party settlement by the weekly compensation rate.

On July 30, 2002, petitioner requested that the city allow her to sign a suspension agreement terminating her weekly workers' compensation benefits so that she would be eligible to collect her full disability retirement pension.[5] The city refused to grant her request.

3. Section 28–35–58(a) of the act provides in pertinent part:

"Where the injury for which compensation is payable * * * was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation * * *, and the employee shall be entitled to receive both damages and compensation. The employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement * * *."

4. Section 28–35–58(a) of the act provides in pertinent part:

"An insurer shall be entitled to suspend the payment of compensation benefits payable to the employee when the damages recovered by judgment or settlement from the person so liable to pay damages exceeds the compensation paid as of the date of the judgment or settlement. The suspension paid shall be that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate * * *."

5. Unless it is possible for Ms. Ruggiero to discontinue her statutory entitlement to weekly workers' compensation benefits, she will be unable to receive her full accidental disability pension benefits because the applicable city ordinance calls for an offset between the accidental disability payment and the workers' compensation benefits paid by the city. Article VI, section 17–191 of the City of Providence Code of Ordinances provides:

Ms. Ruggiero then filed a petition to review with the Workers' Compensation Court seeking the discontinuance of her weekly workers' compensation benefits so that she could instead receive her accidental disability pension benefits. (*See* footnote 5, *supra.*) After a pretrial conference on October 10, 2002, at which Ms. Ruggiero's petition was denied, the matter proceeded to trial in the Workers' Compensation Court.[6]

The trial judge denied and dismissed Ms. Ruggiero's petition. He found that petitioner had failed to show that the act allowed her to remove herself from the workers' compensation system so that she could receive her accidental disability benefits. More specifically, the trial judge found that Ms. Ruggiero did not fall within the ambit of any of the grounds for review or modification of workers' compensation benefits that are set forth in § 28–35–45, because she remained totally disabled.[7] In addition, since the city had refused to sign a suspension agreement, Ms. Ruggiero could not base the discontinuance of her benefits upon § 28–35–7.1, which provides for the discontinuance or suspension of benefits upon written agreement of the parties. Accordingly, the trial judge concluded that the Workers' Compensation Court did not have the authority to discontinue petitioner's benefits because the act did not provide a mechanism for her removal from the workers' compensation system.

The trial judge also rejected Ms. Ruggiero's argument that the city's refusal to discontinue her workers' compensation benefits violated article 1, section 2, and article 1, section 5, of the Rhode Island

"Any amounts paid or payable under the provisions of any worker's [*sic*] compensation law * * * on account of death or disability of a member, shall be offset against and payable in lieu of any benefits payable out of funds provided by the city under the provisions of this article on account of the death or disability of the member. If the value of the total commuted benefits under any such worker's [*sic*] compensation law or action is less than the present value on an actuarial basis of the benefits otherwise payable under this article, then the difference shall be payable under the provisions of this article."

This offset provision prevents employees from receiving a windfall by collecting twice from the city for the same injury. It appears, however, that the city applies this offset even when (as in the instant case) the workers' compensation payments are not actually being paid by the city as a result of the statutory "holiday."

Thus, although Ms. Ruggiero was not and is not collecting weekly workers' compensation benefits from the city because of her settlement with the third party, she was and is precluded from collecting her full accidental disability pension benefits. Presumably, however, as the city pointed out in the "Memorandum of Law" that it filed with the Workers'

Compensation Court, "[o]nce the workers' compensation lien on the recovery of damages from the third-party is exhausted, [Ms. Ruggiero] will have access to both her workers' compensation benefits and accidental disability benefits (with of course the offset in weekly benefits)."

In a separate case that is currently pending before this Court on appeal from the Superior Court, Ms. Ruggiero is challenging the application of the offset pursuant to section 17–191 to her situation. *Ruggiero v. City of Providence* No.2004–376–A.

**6.** It should be noted that on October 25, 2002 Ms. Ruggiero informed the Attorney General of her intention to challenge the constitutionality of certain provisions of the Workers' Compensation Act, but the Attorney General declined to intervene in the case.

**7.** Pursuant to § 28–35–45 of the act, the only proper grounds upon which the Workers' Compensation Court could review, and thereafter suspend, Ms. Ruggiero's workers' compensation benefits in this case would be: (1) if her incapacity had diminished or ended; (2) if she had recovered from the effects of her work-related injury; or (3) if she were able to return to the same work that she was performing at the time of her injury.

Constitution.[8] The trial judge found that Ms. Ruggiero had not overcome the strong presumption of constitutional validity that attaches to legislative enactments such as the Workers' Compensation Act. Accordingly, the trial judge concluded that petitioner remained entitled to weekly workers' compensation benefits and that the City of Providence could continue to enjoy its "holiday" from payments.

On appeal, the Appellate Division affirmed the decision of the trial judge. The Appellate Division agreed that the Workers' Compensation Court did not have the authority under the act to grant Ms. Ruggiero's request to discontinue her workers' compensation benefits in view of the fact that there was no evidence that she had regained her earning capacity. In addition, the Appellate Division held that Ms. Ruggiero's constitutional and eq-

uitable arguments were not supported by the evidence and were legally meritless. The Appellate Division rejected petitioner's contention that she was being held "economically hostage" and had been left "penniless" because of the city's refusal to discontinue her benefits.[9] The Appellate Division noted that Ms. Ruggiero could have opted out of the workers' compensation system;[10] it further noted that, as a result of not having made that option, she became bound by the terms and conditions of the system. In further explanation of its decision, the Appellate Division noted that Ms. Ruggiero had "benefited for almost five (5) years from the provisions of the Workers' Compensation Act while she was seeking money damages from a third party * * *." Having taken into account the foregoing considerations, as well as the policy factors that underlie § 28–35–58(a),[11] the Appellate Division concluded

8. Article 1, section 2, of the Rhode Island Constitution provides, in pertinent part:
 "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws."
 Article 1, section 5, of the Rhode Island Constitution provides:
 "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

9. Ms. Ruggiero's portrayal of herself as an economic "hostage" and as a "penniless" person undoubtedly stems from the fact that at this time she is not receiving weekly workers' compensation payments (because of the statutory "holiday") and is not receiving payments under the city's disability retirement system.

10. Pursuant to § 28–29–17 of the act, employees can choose to opt out of the workers' compensation system and retain their common-law right of action to sue their employers for damages caused by work-related inju-

ries. However, employees must make this election at the time they are hired.

11. In rejecting Ms. Ruggiero's argument that she should be allowed to discontinue her workers' compensation benefits so that she could instead receive her accidental disability pension benefits, the Appellate Division explained as follows the policy considerations that underlie the statutory provision that allows employers to take a "holiday" from the payment of workers' compensation benefits:
 "The theory of this suspension, or 'holiday,' from the payment of benefits under the workers' compensation system is that the employee should not receive a windfall as a result of the third party recovery. Theoretically, the employee has received damages for future lost wages caused by the injury. If the employer is required to pay her workers' compensation benefits (which constitutes replacement of wages) as well, the employee is then recovering twice for the same loss. The statute providing the 'holiday' period anticipates that the employee is able to live on the excess damages spread out on a weekly basis over that period, in the same way she had survived on her weekly workers' compensation benefit check prior to receiving the proceeds of the third party settlement."

that petitioner's "constitutional arguments regarding due process, equal protection, and access to justice are without merit" and that "the principles of equity clearly do not dictate the granting of [her] request to now remove her from the workers' compensation system."

On appeal to this Court, petitioner argues that the Appellate Division committed an error of law in holding that her workers' compensation benefits could not be discontinued at her own request unless there was evidence showing that she was no longer incapable of working. Furthermore, Ms. Ruggiero contends that a reading of the act that would not allow her to voluntarily discontinue her own benefits would violate both article 1, section 2, and article 1, section 5, of the Rhode Island Constitution. Finally, petitioner argues that "equity" dictates that she should not be forced to continue participating in the workers' compensation system once she no longer desires to do so.

## Standard of Review

■ When reviewing a decision of the Appellate Division of the Workers' Compensation Court, we are limited to determining whether that court committed an error of law. *See Poudrier v. Brown University*, 763 A.2d 632, 635 (R.I.2000) ("The law in Rhode Island is well settled that this Court's review of a decree of the Appellate Division * * * is limited to a determination of whether that tribunal erred in deciding questions of law."). The function of this Court is not to weigh the evidence in the case at hand, but solely to review the record and make a determination as to whether there is legally competent evidence to support the ruling of the Appellate Division. *Id.* If this Court determines that there is legally competent evidence in the record to support the Appellate Division's ruling, we are bound by that ruling. *Id.*

## Analysis

It is our opinion that the Appellate Division committed no error of law in the instant case. After reviewing the record, it is clear that there is legally competent evidence to support the findings of that tribunal. Accordingly, we affirm the decision of the Appellate Division. See generally *Poudrier*, 763 A.2d at 635.

■ Ms. Ruggiero argues that it was an error of law for the Appellate Division to hold that it did not have the authority to discontinue her workers' compensation benefits absent evidence that she had regained her earning capacity. It is our view, however, that the Appellate Division properly construed and applied the relevant language of the Workers' Compensation Act. Under § 28–35–45(a)(1) of the act, entitled "Review and modification of decrees," the Workers' Compensation Court has the authority to review the workers' compensation benefits of an employee when the following circumstances are present:

"(i) Incapacity of the injured employee has diminished, ended, increased, or returned;

"(ii) Employee has recovered from the effects of his or her work-related injury and is disabled only as a result of a preexisting condition;

"(iii) Employee is able to return to the same work which he or she performed at the time of his or her injury;

"(iv) Employee has refused an offer of suitable employment; or

"(v) Weekly compensation payments have been based upon an erroneous average weekly wage * * *."

Subpart (b) of § 28–35–45 quite clearly indicates that it is only when one of those enumerated grounds is present that the

Workers' Compensation Court "may decrease, suspend, increase, commence, or recommence compensation payments in accordance with the facts \* \* \*." Ms. Ruggiero has presented no evidence to suggest that her situation falls within the ambit of any of these grounds for review or modification of workers' compensation benefits. In fact, she concedes that she remains totally disabled and unable to return to work. Accordingly, the Appellate Division properly concluded that it lacked the authority under the act to discontinue petitioner's benefits.

 The Appellate Division also correctly rejected as unsupported by the evidence and as legally meritless Ms. Ruggiero's argument that failure to allow her to discontinue her own benefits violates the Rhode Island Constitution. It is well established in Rhode Island that all statutes are presumed to be constitutional and will not be invalidated on constitutional grounds unless the challenging party can prove beyond a reasonable doubt that the statute at issue is repugnant to a provision of the Rhode Island Constitution. *Newport Court Club Associates v. Town Council of Middletown,* 800 A.2d 405, 409 (R.I. 2002) (" '[W]e begin with the principle that legislative enactments of the General Assembly are presumed to be valid and constitutional.' "); *City of Pawtucket v. Sundlun* 662 A.2d 40, 45 (R.I.1995) ("[T]his court will not invalidate a legislative enactment unless the party challenging the enactment can prove *beyond a reasonable doubt* to this court that the statute in question is repugnant to a provision in the constitution."); *see also State v. Garnetto,* 75 R.I. 86, 94, 63 A.2d 777, 781 (1949) ("[T]his court will make every reasonable intendment in favor of the constitutionality

of a legislative act, and so far as any presumption exists it is in favor of so holding."). The Workers' Compensation Act is no exception to the rule of presumptive constitutionality.

In the present case, there is nothing in the record that indicates that the cited provisions of the Rhode Island Constitution are offended by the statutory scheme governing Ms. Ruggiero's workers' compensation benefits. We have carefully considered the provisions of the state constitution upon which she relies, and we can see nothing therein which would require that she be granted the relief that she is seeking.

 Finally, we agree with the Appellate Division that petitioner's argument based on a generalized reference to equity is also without merit. As the Appellate Division correctly noted, Ms. Ruggiero could have opted out of the workers' compensation system prior to sustaining an injury, but she chose to remain within the workers' compensation system.[12] By choosing not to opt out of the workers' compensation system, Ms. Ruggiero is deemed to have accepted all of its terms and conditions, including the provisions that govern how a person can be removed from the system.

No principle of equity supports petitioner's contention that she should be allowed to benefit from the workers' compensation system when it works to her advantage and then unilaterally remove herself from the system when the receipt of such benefits is no longer advantageous to her. The Appellate Division correctly stated that the workers' compensation system "is, in a sense, a contract between employees and employers, the execution of which is over-

---

12. We would note that Ms. Ruggiero did in fact benefit from the workers' compensation system by virtue of the fact that she received weekly payments for almost five years while awaiting monetary damages from the party responsible for her injury.

seen by the Workers' Compensation Court." As a party to such a "contract," Ms. Ruggiero is bound by the rules peculiar to the workers' compensation system, and her references to unspecified principles of equity provide no support for her contention that she should no longer be bound by those terms. The relationship between the statutorily established workers' compensation system and the disability pension system of the City of Providence is complex, but the legal rules that govern that relationship are straightforward. In such a situation, the controlling maxim of equity is: "Equity follows the law." This Court stated many years ago:

> "The maxims, that every right has a remedy, and that where the law does not give redress equity will afford relief, however just in theory, are subordinate to positive institutions, and cannot be applied either to subvert established rules of law, or to give the courts a jurisdiction hitherto unknown." *Greene v. Keene* 14 R.I. 388, 395 (R.I. 1884).

*See also Knight v. Town of Glocester*, 831 F.2d 30, 32 (1st Cir.1987) (articulating and explaining the principle that "equity must follow the law"); *see generally Reno v.*

*Bossier Parish School Board*, 520 U.S. 471, 485, 117 S.Ct. 1491, 137 L.Ed.2d 730 (1997) (rejecting "an attempt to obtain through equity that which the law * * * forbids."); *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044 (1893) ("Courts of equity can no more disregard statutory * * * requirements and provisions than can courts of law."); *Timken Co. v. United States*, 37 F.3d 1470, 1477 (Fed.Cir.1994) ("This court will not act in a manner contrary to a statutory provision dealing with the precise issue.").

## Conclusion

For these reasons, we affirm the decree of the Appellate Division of the Workers' Compensation Court. The papers in this case may be returned to the Workers' Compensation Court with our decision endorsed thereon.